Defendant Donald Williams appeals from the Mobile County Circuit Court's judgment that: 1) quieted title in the plaintiffs to real property located in Mobile County, Alabama, and 2) allowed plaintiffs a redemption *Page 964 
in the property which was sold due to the non-payment of taxes. Williams contends that the trial court committed several errors which require that the judgment be reversed. We disagree, and affirm the decision of the court below.
This case deals with multiple sales of the same land. The pertinent facts are as follows:
Mack Holder was the original owner of the land, and, at his death was survived by several heirs, including his niece, Thelma Holder. In 1978, the heirs initiated legal proceedings to clear the title to the property. In February of 1978, a guardian ad litem was appointed by the court to protect the interests of any unknown parties under disability.
Before the proceedings ended, the State of Alabama purchased the property at a tax sale on June 12, 1979. The State subsequently sold the property to Donald Williams on February 8, 1980.
On July 12, 1979, a decree was entered by the Circuit Court of Mobile County in the proceedings brought by the heirs of Mack Holder. This decree was later amended, and a final decree was entered on March 31, 1980. The decree listed as plaintiffs those persons who owned the property, along with their percentages of ownership. One of those named was Elizabeth Payton, who the court found owned a 10% interest in the land.
Elizabeth Payton, however, had executed a quitclaim deed to Thelma Holder, purportedly selling her interest in the land for $1,000.00. The deed was executed on January 8, 1980, and recorded on April 15, 1980.
Thelma Holder testified that, since the time the court entered its decree in March 1980, she and the other heirs of Mack Holder had claimed the property as their own, visited it from time to time, always claimed ownership of it, and had never given up possession of the property.
On or about February 2, 1982, Elizabeth Payton, for consideration of ten dollars, purportedly sold her interest in the property, by quitclaim deed, to Donald Williams.
Donald Williams testified that, early in 1980, after he bought the property from the State of Alabama, he went to the land and posted "no trespassing" and "no hunting" signs. He did not return to the property until February 1983, but did have his brother, Thomas Killons, visit the property from time to time. The property was uninhabited for a few years prior to this action.
Two other witnesses, Mamie Whitfield and Richard Ogburn, testified that they had each visited the property after Donald Williams had supposedly posted the signs, but neither had seen any of these signs. Mamie Whitfield testified that she was not aware of any signs being posted until the day of the trial. Richard Ogburn testified that he made approximately eight to ten trips to the land over a two-and-one-half-year period, but never saw any signs.
After listening to the testimony and considering all the evidence, the trial judge, sitting without a jury, found that the plaintiffs were entitled to the relief they requested and quieted title in them. In its order of July 19, 1983, the trial court made the following findings of fact:
 (1) At the time of the filing of this suit plaintiffs were in legal possession of the subject lands;
 (2) At the time of the filing of the complaint herein, there was no other suit pending to contest the plaintiffs' right to or interest in the said lands;
 (3) Title in the plaintiffs was established by a decree of the Mobile County Circuit Court entered on the 31st day of March 1980.
 (4) That on the 12th day of June 1979, the above-described lands were sold for nonpayment of 1978 taxes to the State of Alabama, which lands were assessed in the name of Elizabeth Payton, who at that time owned an interest in said lands along with the plaintiffs herein, but who subsequently sold her 10% undivided interest to plaintiff, Thelma Holder, by a quitclaim deed dated January 8, 1980;
 (5) That on the 16th day of January 1980, said tax certificate of the State of Alabama was purchased by the defendant, *Page 965 
Donald B. Williams, by paying to the State of Alabama
 $191.78 which amount included taxes and interest for the years 1978 and 1979;
 (6) That on the 20th day of December 1982, the said defendant, Donald B. Williams, obtained a tax deed from John L. Moore, Probate Judge of Mobile County;
 (7) That the said defendant, Donald B. Williams, continued to pay taxes on said lands for the years 1980 in the amount of $186.01; 1981 in the amount of $194.37; and, 1982 in the amount of $207.39.
Donald Williams appealed from this order. Subsequent to the filing of this appeal, on October 11, 1983, Mobil Oil Exploration Producing Southeast, Inc. (Mobil Oil), was substituted as a party appellee in this action.
Appellant Donald Williams raises six issues for our review which are:
 1. Whether the trial court committed reversible error when it failed to join Mobil Oil, which Williams contends was an indispensable party.
 2. Whether the plaintiffs in this case were the original owners of the land, or their successors in interest, and therefore entitled to redeem the property.
 3. Whether there was an actual tender of redemption made as required by Alabama Code 1975, § 40-10-80.
 4. Whether appellee Mobil Oil perpetrated a fraud on the trial court.
 5. Whether the trial court erred in ruling that appellant Donald Williams was not in possession of the property.
 6. Whether the decree quieting title in the original plaintiffs in the prior action is valid against appellant Donald Williams, in light of his claim that he had no notice of the proceedings and was not joined as a party in the action pursuant to the Alabama Rules of Civil Procedure.
 I, II, and IV
Appellant Williams argues that Mobil Oil was an indispensable party because it was the true owner of the land, and that plaintiffs below were, therefore, not entitled to redemption, and directs this court's attention to a deed from the plaintiffs below to Mobil Oil. Williams further contends that, since Mobil Oil was not a party to the action, it perpetrated some sort of fraud on the trial court. We disagree with each of these assertions.
It is well settled in Alabama that a deed is not effective until it is delivered to the grantee. Pittman v. Pittman,247 Ala. 458, 25 So.2d 26 (1946). The record does not contain any evidence that there was a delivery of a deed to Mobil Oil. One of the trial court's specific findings of fact was that the plaintiffs (the heirs of Mack Holder) were in legal possession of the subject land; that finding resolved issues one and two against Williams. Since the evidence was presented ore tenus, we uphold the trial court's findings, inasmuch as they were not plainly and palpably erroneous, and were supported by the evidence and reasonable inferences therefrom. Eagerton v.Courtaulds North America, Inc., 421 So.2d 104 (Ala. 1982).
Even if the trial court had found that there was delivery of a deed transferring ownership to Mobil Oil, it still was not an indispensable party to the suit. The Alabama Code allows redemption by "the person against whom the taxes were assessed or the owner of the land at the time of the sale, his heir, devisee, vendee or mortgagee. . . ." Code 1975, § 40-10-83. Mobil Oil did not belong in any of these categories. Thus, the proper parties for redemption were before the court, and Mobil Oil was not an indispensable party to be joined under Alabama Rule 19.
There is not even a scintilla of evidence that Mobil Oil perpetrated a fraud on the trial court in not seeking joinder in this action. Therefore, appellant cannot prevail on this issue.
 III and V
Williams maintains that Mobil Oil was required to make a tender in order to be entitled to redemption of the land, according to Code 1975, §§ 40-10-78, -80. Section 40-10-78, however, is inapplicable *Page 966 
in this case, as its use is dependent upon the use of §40-10-76 or § 40-10-77, neither of which is relied on here. Section 40-10-80, Code 1975, states:
 If, in any action brought to recover the possession of lands sold for taxes by or against the purchaser or other person claiming under him, it is shown that the party claiming adversely to the tax title, being entitled to redeem, made within the time allowed for redemption the payment required by law for the redemption of such lands, or made tender thereof, and the amount of such tender has been paid into court for the opposite party, judgment must be rendered in his favor for the costs accruing after such payment or tender, except as against the state. [Emphasis added.]
The statute allows either payment or tender thereof. There is ample evidence to show payment into the court of the amount due, thus satisfying the statute.
A "short statute of limitations" is contained in § 40-10-82, Code 1975, which states that the redemption action must be filed within three years from the date when the purchaser became entitled to demand a deed for the property. Several of our cases hold that this statute does not begin to run until the purchaser is in adverse possession of the land and has become entitled to demand a deed to the land. See Quinn v.Hannon, 262 Ala. 630, 80 So.2d 239 (1955); Tanner v. Case,273 Ala. 432, 142 So.2d 688 (1962); Grice v. Taylor, 273 Ala. 591,143 So.2d 447 (1962).
Williams maintains that he was in adverse possession of the property. He relies on the proposition that adverse possession is achieved when one uses the land in a manner consistent with its character. See Turnham v. Potter, 289 Ala. 685,271 So.2d 246 (1972); O'Connor v. Rabren, 373 So.2d 302 (Ala. 1979). Williams's acts of taking possession of the land consisted at most of a couple of visits to the property, posting some "no trespassing" and "no hunting" signs, paying taxes on the property after he bought it from the State, and having his brother visit the property from time to time.
 When a party claims title to land by way of adverse possession, the presumption is in favor of the record owner, and a heavy burden of proof rests on the one claiming by adverse possession. Knowles v. Golden Stream Fishing Club, Inc., 331 So.2d 253 (Ala. 1976); Murphy v. Leatherwood, 221 Ala. 61, 127 So. 843
(1930); Lucy v. Tennessee C.R.R., 92 Ala. 246, 8 So. 806 (1890).
Kerlin v. Tensaw Land Timber Co., 390 So.2d 616, 619 (Ala. 1980).
The above-stated burden has not been met by Williams. The acts of possession he claims to have performed do not amount to actual adverse possession.
 Mere casual acts of ownership as where one authorized persons to go upon land to cut timber, payment of taxes, and requesting another to look after the premises do not constitute adverse possession. [Citations omitted.]
Tensaw Land Timber Co. v. Rivers, 244 Ala. 657, 15 So.2d 411
(1943).
The acts of possession in the instant case are very similar to those in the Rivers case. Williams said that he posted some signs, but no one else had seen these signs except his brother. In any event, these acts of possession by Williams and his brother were few and far between, and when acts are rare and widely separated in time, as are these, they do not constitute adverse possession, but rather are merely transitory trespasses. Bradley v. Gordon, 240 Ala. 556, 200 So. 736
(1941); Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289 (1972);Courtney v. Boykin, 356 So.2d 162 (Ala. 1978). Except as to these signs, which nobody saw, the record contains no evidence that Williams tried to notify the plaintiffs of his claim of ownership in the property. Based on the facts before us, we agree with the trial court that Williams was not in possession of the property and, therefore, that a proper redemption was made. *Page 967 
 VI
Williams's final contention is that the original decree quieting title in the plaintiffs is not binding on him, because he had no notice of the proceedings and was not joined as a party in the action. During his testimony at trial, however, Williams admitted to having knowledge of the proceedings and decree in 1978 or 1979. An initial decree was entered in the action on July 12, 1979, and Williams did not purchase the property from the State until February 8, 1980; therefore, he had either actual or constructive notice of a suit pending in the circuit court before he purchased the property. After listening to the evidence presented, the trial court found that Williams had the required notice, and, absent any showing of plain and palpable error on the trial court's part, we agree with its decision.
For all of the above-stated reasons, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.